IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JAMES VERNON RICKS, JR.                                                  PLAINTIFF

v.                                  CIVIL ACTION NO. 3:11-CV-00039-GHD-JMV

CITY OF WINONA; COUNTY OF MONTGOMERY;
WINONA-MONTGOMERY AIRPORT;
WINONA-MONTGOMERY BOARD; and JAN BAILEY,
CLIFFORD DANCE, CECIL AUSTIN, EUGENE HATHCOCK,
and JIMMY HAYWARD, individually and as representatives
of the Winona-Montgomery Board                             DEFENDANTS

MEMORANDUM OPINION GRANTING
MOTIONS FOR SUMMARY JUDGMENT

Presently before the Court are two motions for summary judgment, [78] and [82], filed by Defendants City of Winona and Winona-Montgomery Airport, Winona-Montgomery Airport Board, Jan Bailey, Jewell Harrison, Jim Corban, Brent Richardson, Clifford Dance, Cecil Austin, Eugene Hathcock, and Jimmy Hayward. Sadly, the Plaintiff, James Vernon Ricks, Jr., passed away on February 19, 2012. *See* Suggestion of Death [95]. To date, no motion for substitution pursuant to Rule 25 of the Federal Rules of Civil Procedure has been filed in this case. After due consideration, the Court finds that the motions for summary judgment should be granted and the case dismissed.[1]

---

[1] "The question of survival [of claims after the plaintiff's death] is not one of procedure, 'but one which depends on the substance of the cause of action.'" *Mich. Cent. R.R. Co. v. Vreeland*, 227 U.S. 59, 67, 33 S. Ct. 192, 57 L. Ed. 417 (1913) (quoting *Schreiber v. Sharpless*, 110 U.S. 76, 80, 3 S. Ct. 423, 28 L. Ed. 65 (1884)), *cited in Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 338 n.7, 108 S. Ct. 1837, 100 L. Ed. 2d 349 (1988). Thus, in such a situation, this Court looks to the substance of the cause of action to determine whether the claim survives a plaintiff's death. "Although an injured party's personal claim was extinguished at common law upon the death of either the injured party himself or the alleged wrongdoer, *see* W. Prosser, Torts 888–891 (4th ed. 1971), it has been held that pursuant to [Section] 1988[,] state survivorship statutes which reverse the common-law rule may be used in the context of actions brought under [Section] 1983." *Moor v. Alameda Cnty.*, 411 U.S. 693, 702 n.14, 93 S. Ct. 1785, 36 L. Ed. 2d 596; *see, e.g., Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961); *Pritchard v. Smith*, 289 F.2d 153 (8th Cir. 1961). Mississippi's survival statute governs both the claims brought under Section 1983 and the state law claims. Mississippi's survival statute provides in pertinent part that "[e]xecutors, administrators, and temporary administrators may commence and prosecute any personal action whatever, at law or in equity, which the testator or

1

### A. Factual and Procedural Overview

Plaintiff James Vernon Ricks, Jr. ("Plaintiff") brought this lawsuit against the City of Winona, Mississippi; the County of Montgomery; the Winona-Montgomery Airport; and the following individually and as representatives of the Winona-Montgomery Board: Jan Bailey, Clifford Dance, Cecil Austin, Eugene Hathcock, and Jimmy Hayward. Plaintiff, a lessee of space at the Winona-Montgomery Airport, alleged that Defendants violated his rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment pursuant to 28 U.S.C. § 1343(a)(3), 42 U.S.C. §§ 1983 and 1988, as well as his rights under state law. Defendants have moved for summary judgment on all of Plaintiff's claims.

### B. Summary Judgment Standard

This Court grants summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes

---

intestate might have commenced and prosecuted." MISS. CODE ANN. § 91-7-233. Because the Court finds the claims should be dismissed on their merits or otherwise, the Court does not reach the issue of whether the claims survive Plaintiff's death.

demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). To survive a motion for summary judgment, the non-movant must present sufficient evidence to support the elements of its prima facie case. *Celotex Corp.*, 477 U.S. at 321–23, 106 S. Ct. 2548. "In adjudicating a motion for summary judgment, the court must view all facts in the light most favorable to the non-movant." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163–64 (5th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). However, a district court is not required "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* at 164 (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S. Ct. 98, 121 L. Ed. 2d 59 (1992))). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to preclude summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1985).

*C. Analysis*

On May 6, 1993, Plaintiff paid J.A. Olson Company, an Illinois corporation, for a hangar building "excluding the real property upon which it is situated" at the west end of the airstrip at the Winona-Montgomery Airport in which to store his two private aircrafts. *See* Bill of Sale [86-9] at 1. Subsequently, the airport initiated a lease requirement for all such property at the

3

airport. Plaintiff signed a lease for the hangar building and property under the roof of the hangar, but did not have the lease notarized until 2005. Plaintiff paid $190 per year on this lease, including the time period prior to its full execution. Plaintiff brought this action seeking damages for alleged mistreatment by Defendants related to his occupancy of airport property.

The Court now turns to the motions for summary judgment before it. The Plaintiff has claimed that he was mistreated by Defendants in various ways and maintains that this alleged mistreatment constituted FAA violations, as well as violations of Plaintiff's constitutional rights under the Due Process Clause of the Fourteenth Amendment, and various causes of action under state law.

The County of Montgomery is a political subdivision located in Mississippi and organized under state law. The City of Winona is a municipality and political subdivision in Montgomery County organized under Mississippi state law. Defendant Winona-Montgomery Airport and the Winona-Montgomery Airport Board are governmental entities that operate under the authority of Mississippi's Airport Authorities Law, Mississippi Code §§ 61-3-1, *et seq.* *See* Joint Agreement for the Operation of the Winona-Montgomery County Airport [78-3] at 14. The City of Winona and Montgomery County "place[d] the acquisition construction, operation, future expansion[,] and maintenance of the Winona/Montgomery County Airport under the control of . . . the Winona/Montgomery County Airport Board, as authorized by [Mississippi Code] Section 61-5-35." *See* Joint Resolution at 1. The airport board has "the power to make, promulgate, and amend such reasonable general or special rules, regulations[,] and procedures . . . , which regulations when so made, approved and published, shall have the force and effect of law" and must not be "inconsistent with, or contrary to, any Federal or State laws or rules and regulations." Airport Operation Regulations & Minimum Standards for Aeronautical Servs. for

the Winona-Montgomery County Airport [82-10] at 13. Accordingly, the Winona-Montgomery Airport Board oversees the operation of the Winona-Montgomery Airport. The airport manager has the duty to enforce all laws, rules, and regulations pertaining to the operation of the airport. Joint Resolution at 3. The individually named Defendants were voting members of the airport board at the time of the alleged incidents. Although this Court acknowledges that absolute immunity of defendants is a threshold matter that should be determined as early as possible in a proceeding, *see, e.g., Hulsey v. Owens*, 63 F.3d 354, 356 (5th Cir. 1995), the Court will assume that Defendants are subject to this suit on both Plaintiff's federal and state law claims, as summary judgment is proper on other grounds.

### 1. FAA Violations Claims

As an initial matter, the Court turns to Plaintiff's claims that Defendants conduct towards him constituted violations of the FAA's "rules, regulations, policies, practices, and/or customs" and "FAA Airport Improvement grant plans," pursuant to the Airport and Airway Improvement Act of 1982 ("AAIA"), as amended, 49 U.S.C. §§ 47101, *et seq.* Pl.'s Compl. [1] at ¶¶ 21, 22, 31; Pl.'s Resp. to the City's MSJ [88] at 8. The Court notes at the outset that such claims are not properly before this Court.

If the FAA approves an airport's application for AAIA grant funds, the Section 47107 "grant assurances" become a binding contractual obligation between the federal government and the airport receiving the funds. *Pac. Coast Flyers, Inc. v. San Diego*, FAA Docket 16-04-08, 2005 WL 1900515, at *11 (July 25, 2005). Section 47107 mandates that the FAA ensure that airports receiving AAIA grant funds adhere to their grant assurance obligations. *See* 49 U.S.C. § 47107(g). The FAA is authorized to initiate enforcement proceedings against airport recipients

5

allegedly in breach of these obligations and issue orders against airport recipients found in breach. *See* 49 U.S.C. § 47122.

Importantly, Plaintiff has conceded he has no evidence that the FAA pursued any action against Defendants for any alleged FAA violations. Plaintiff also did not file a formal complaint with the FAA. Instead, he brought the FAA violations claims in this Court under 42 U.S.C. § 1983. Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws shall be liable to the party injured in an action at law . . . .

It is well settled that Section 1983 provides a cause of action to redress both violations of the Constitution and violations of federal statutes. *See Maine v. Thiboutot*, 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980); *Gracia v. Brownsville Hous.*, 105 F.3d 1053, 1057 (5th Cir. 1997). No cause of action exists, however, "where the statute in question does not 'create enforceable rights, privileges, or immunities within the meaning of [S]ection 1983.' " *Gracia*, 105 F.3d at 1057 (citing *Suter v. Artist M.*, 503 U.S. 347, 365, 112 S. Ct. 1360, 118 L. Ed. 2d 1 (1992) (quoting *Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 423, 107 S. Ct. 766, 93 L. Ed. 2d 781 (1987))). "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suit under [Section] 1983." *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S. Ct. 2615, 69 L. Ed. 2d 435 (1981).

"Courts interpreting [Section] 47107 [grant assurances] have uniformly held that airport users have no right to bring an action in federal court claiming a recipient airport's violation of the [Section] 47107 grant assurances until that claim has been raised with the FAA." *Airborne*

*Tactical Advantage Co., LLC v. Peninsula Airport Comm'n*, No. 4:05CV166, 2006 WL 753016, at *1 (E.D. Va. Mar. 21, 2006). *See, e.g., New England Legal Found. v. Mass. Port Auth.*, 883 F.2d 157, 168 (1st Cir. 1989); *Interface Grp., Inc. v. Mass. Port Auth.*, 816 F.2d 9, 15 (1st Cir. 1987); *W. Airlines v. Port Auth. of N.Y. & N.J.*, 817 F.2d 222, 225 (2nd Cir. 1987), *cert. denied*, 485 U.S. 1006, 108 S. Ct. 1467 (1988); *Montauk-Caribbean Airways, Inc. v. Hope*, 784 F.2d 91, 97 (2nd Cir. 1986); *Nw. Airlines, Inc. v. Kent, Mich.*, 955 F.2d 1054, 1058–59 (6th Cir. 1992); *Four T's, Inc. v. Little Rock Mun. Airport Comm'n*, 108 F.3d 909, 916 (8th Cir. 1997); *Arrow Airways v. Dade Cnty.*, 749 F.2d 1489, 1491 (11th Cir. 1985); *Hill Aircraft & Leasing Corp. v. Fulton Cnty.*, 729 F.2d 1467 (11th Cir. 1984); *Cedarhurst Air Charter v. Waukesha Cnty.*, 110 F. Supp. 2d 891 (E.D. Wis. 2000); *Skydiving Ctr. of Greater Washington, D.C., Inc. v. St. Mary's Cnty. Airport Comm'n*, 823 F. Supp. 1273, 1279 n.2 (D. Md. 1993); *Ne. Jet Ctr. & Lehigh-Northampton Airport Auth.*, 767 F. Supp. 672, 677 (E.D. Pa. 1991); *O'Connell Mgmt. Co. v. Mass. Port Auth.*, 767 F. Supp. 368, 375 (D. Mass. 1990); *Nicholson Air Servs., Inc. v. Bd. of Cnty. Comm'rs of Allegany Cnty.*, 706 A.2d 124, 142 (Md. Ct. Spec. App. 1998). A person doing business with an airport receiving AAIA funds may institute FAA enforcement proceedings by filing a complaint with the FAA alleging that the airport has violated its Section 47107 assurances; this is commonly referred to as a Section 16 Complaint. *See* 14 C.F.R. §§ 16.1–16.307. Plaintiff acknowledged that although he was informed of his right to file a formal complaint with the FAA, he did not do so. Because this Court is not the proper forum for Plaintiff's claims that Defendants violated FAA's policies and procedures and the AAIA, summary judgment is proper as to these claims.[2]

---

[2] To the extent Plaintiff has brought state law claims alleging violations of FAA's policies and procedures and the AAIA, these are preempted. *See, e.g., City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 639, 93 S. Ct. 1854, 36 L. Ed. 2d 547 (1973) (stating that the FAA created a uniform and exclusive system of federal regulation in the field of air safety); *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1325 (10th Cir. 2010) (quoting

## 2. Other Claims

Plaintiff alleged that the Winona-Montgomery County Airport "has a constant history of treating [Plaintiff] differently than other airport tenant[s] to [Plaintiff's] detriment," *id.* ¶ 22, in violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. Plaintiff conceded that he was not a member of a protected class and that his only claim in this regard was that he was treated unfairly because he was a Leflore County resident and not a Montgomery County or City of Winona resident. Plaintiff contended he was bringing a "class of one" claim under *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (per curiam). A plaintiff must meet a high standard in the Fifth Circuit in order to successfully assert such a claim. *Mata v. City of Kingsville, Tex.*, 275 F. App'x 412, 415 (5th Cir. 2008); *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000). "[T]he plaintiff must show that (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Lindquist v. City of Pasadena, Tex.*, No. 09–20683, 2012 WL 208065, at *7 (5th Cir. Jan. 25, 2012) (citing *Vill. of Willowbrook*, 528 U.S. at 564, 120 S. Ct. 1073); *see also Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007) (citing *Vill. of Willowbrook*, 528 U.S. at 564, 120 S. Ct. 1073). Thus, the burden is on the plaintiff in such a claim to prove that he has been intentionally treated less favorably than others similarly situated—in this case, other airport tenants.

---

*Montalvo v. Spirit Airlines*, 508 F.3d 464, 471 (9th Cir. 2007) (the field of aviation safety "has long been dominated by federal interests")); *City of Oceanside v. AELD, LLC*, 740 F. Supp. 2d 1183, 1190 (S.D. Calif. 2010) ("The comprehensive statutory scheme of the FA Act and the AAIA demonstrate the dominance of the federal interest in aviation safety and more specifically, land use for airport facilities.").

Plaintiff "speculate[d] that the reason for the alleged discrimination is that he [was] not a resident of Winona or Montgomery County" and conceded that "no one ha[d] told him he [was] treated differently because of his residence." Pl.'s Mem. Brs. Supp. Resp. to Defs.' MSJ [87] & [89] at 6. Plaintiff described the people of Winona and Montgomery County as "clannish" and "cliquish," and stated that he was not a part of that "clan" or "clique." Id. Plaintiff conceded, however, that he was not aware of whether any other airport tenants were residents of other counties and had not attempted to check. Id. Even taking into account all of Plaintiff's factual allegations as to his alleged mistreatment, the Court is of the opinion that Plaintiff has not brought forth sufficient evidence that he was treated less favorably than other airport tenants to sustain his equal protection claim past summary judgment. Accordingly, Plaintiff's equal protection claim is dismissed.

Plaintiff additionally alleged that individually named Defendant Jimmy Hayward acted under the color of law, and by virtue of his authority as airport manager, substantially deprived the Plaintiff of his due process rights and property interests and other privileges and immunities guaranteed under the Fourteenth Amendment. Plaintiff averred that Defendants took action without providing Plaintiff a due process hearing and committed other violations of Plaintiff's due process rights under the Fourteenth Amendment. Pl.'s Compl. [1] ¶¶ 27, 29, 30.

Plaintiff further alleged in his complaint that at all times Defendants were acting in the course and scope of their employment and/or appointment and that their recommendations and actions were "unjustified, unreasonable, grossly negligent[,] and reckless" in violation of the Mississippi Constitution and other common law principles. Pl.'s Compl. [1] ¶¶ 45, 46. Plaintiff claimed that the City, County, and airport board failed to adequately train its members and employees with regard to federal and state statutes and laws "in deliberate indifference and

reckless disregard to the public at large, including the Plaintiff." Pl.'s Compl. [1] ¶ 33. Plaintiff additionally alleged that individually named Defendant Jimmy Hayward acted under the color of law, and by virtue of his authority as airport manager, substantially deprived the Plaintiff of his due process rights and property interests and other privileges and immunities guaranteed under the Mississippi Constitution.

The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deprive any person of life, liberty or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Due Process Clause has procedural and substantive components. "Substantive due process prohibits the government's abuse of power or its use for the purpose of oppression, [whereas] procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996). Plaintiff appears to be asserting a procedural due process claim. The "constitutional right to due process is not . . . an abstract right to hearings conducted according to fair procedural rules. Rather, it is the right not to be deprived of life, liberty, or property without such procedural protections." *Monk v. Huston*, 340 F.3d 279, 282–83 (5th Cir. 2003). Thus, "[t]o bring a procedural due process claim under [Section] 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). Plaintiff has not identified what particular interest he had that was deprived by governmental action. Plaintiff leased property from the Winona-Montgomery Airport to store his two private aircrafts. Plaintiff continued to lease property from the airport, though he has asserted factual allegations that he has suffered mistreatment by Defendants.

To the extent these claims are asserted under Section 1983, they are subject to a certain limitations period that begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *See Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) (internal citation omitted). The United States Supreme Court has held that the forum state's personal-injury statute of limitations should be applied to all Section 1983 claims. *Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) ("[T]he length of the statute of limitations" for [Section] 1983 claims "is that which the State provides for personal-injury torts."). The statute of limitations for Section 1983 claims in Mississippi is three years. *See* MISS. CODE ANN. § 15-1-49.

To the extent these claims are asserted under state law, the MTCA provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a claim or suit. MISS. CODE ANN. § 11-46-7(1); *see also Bolivar Leflore Med. Alliance, LLP v. Williams*, 938 So. 2d 1222, 1226 (Miss. 2006). Defendants the City of Winona, the Winona-Montgomery Airport, and the Winona-Montgomery Airport Board are governmental entities amenable to suit under Mississippi Code §§ 11-46-1, *et seq.*, that operate under the authority of Mississippi's Airport Authorities Law, Mississippi Code §§ 61-3-1, *et seq.* The MTCA imposes a one-year statute of limitations for suits filed against a governmental entity. *See* MISS. CODE ANN. § 11-46-11. Plaintiff's counsel stipulated that for purposes of Plaintiff's state law claims and his notice of claim letter under the MTCA, Plaintiff's injuries occurred on October 16, 2008, and were ongoing from that point. Plaintiff's specific allegations of mistreatment, whether asserted under federal or state law, are analyzed as follows.

First, Plaintiff alleged that the airport "lost" his lease and "threatened [Plaintiff] to have to move the Ricks hangar in 2004 saying that Ricks had no lease." Pl.'s Compl. [1] ¶ 23.

Plaintiff did not address the lease claim in his responses to the motions, except to state "Plaintiff testified that he signed and submitted a written lease for the space in 1994, but he never possessed a copy of a fully executed lease." *See* Pl.'s Mem. Brs. Supp. Resp. to Defs.' MSJ [87] & [89] at 2. Since 1994, the Winona-Montgomery Airport has required that each tenant of property at the airport present to the airport a copy of the tenant's fully executed lease. Accordingly, in 1994, the airport requested a fully executed lease from Plaintiff for the property he occupied at the airport. Due to disagreements about the content of the lease and Plaintiff's belief that his signature without notarization on the lease should be sufficient, Plaintiff did not submit a fully executed lease. Instead, he wrote letters to the FAA, maintaining that the airport was discriminating against him by requesting proof of a properly executed lease. The FAA responded after review: "We believe it is prudent that the Airport Board maintain current records of current leases," and that the airport's request for a fully executed lease was "reasonable" and required of all other airport tenants. *See* Sept. 19, 2005 Letter from FAA to Pl. [78-10] at 1. Plaintiff sent additional letters to the FAA claiming this request for proof of lease constituted discrimination and harassment. The FAA responded that if Plaintiff disagreed with the FAA's findings, Plaintiff should file a formal complaint with the FAA, which as mentioned above, Plaintiff did not do. Plaintiff finally submitted a fully executed lease to the airport in 2005. The Court finds that summary judgment is proper as to this claim, as Plaintiff's proper course of action was to file a formal complaint with the FAA.

Second, Plaintiff alleged that the airport board refused to provide him with meeting minutes and airport rules, regulations, and minimum standards, despite his requests for these items. *See* Pl.'s Compl. [1] ¶ 25. Plaintiff further alleged that the airport had meetings that were secret to him. However, Defendants have submitted exhibits of several letters sent by the

12

airport's attorney to Plaintiff requesting his attendance at airport board meetings to address any issues he might have with respect to his occupancy of airport property. *See* Letters from Airport Bd. to Pl. [78-14], [82-10]. Plaintiff also conceded that he only attended two airport board meetings and never met with the airport board or the mayor of the City of Winona to attempt to resolve his issues with the airport. The Court finds that Plaintiff has not presented sufficient evidence to sustain these claims past summary judgment. Accordingly, summary judgment is proper as to these claims.

Third, Plaintiff claimed his wash rack/tie down area was destroyed by the airport manager "with no warning or consultation with [Plaintiff] and contrary to the FAA Airport Improvement grant plans under which the airport says Ricks' property was required to have been destroyed." Pl.'s Compl. [1] ¶ 21. Plaintiff contended that at some point prior to the early 1990s he purchased this airport wash rack/tie down area on airport property from private individual Joey Harmon. Plaintiff described the wash rack/tie down area as "a trapezoidal concrete slab about 40 feet by 25 feet, surrounded by cinder blocks about two feet tall" that was "used for tying down planes to be washed or to leave them outside a hangar." Pl.'s Mem. Brs. Supp. Resp. to Defs.' MSJ [87] & [89] at 4. Plaintiff conceded that when he purchased the wash rack/tie down area from Harmon, "Harmon neither owned nor leased the Airport property where it was located." *Id.* Plaintiff further maintained that due to the airport's expansion of the taxiway and apron, the airport removed the cinder blocks and paved over a portion of the wash rack/tie down area. Plaintiff maintained that the FAA-approved expansion plans did not call for the expansion to go through the wash rack. To the extent this claim alleges FAA violations, it is not properly before this Court and is thus dismissed. Plaintiff maintained that he never received notice from Defendants and that the lack of notice constitutes a breach of contract. However, although

Plaintiff claims that he owned the wash rack/tie down rack, he concedes the airport owned the property on which it was placed by him. The only contract at issue is Plaintiff's lease for the property under the roof of the hangar building. Because the wash rack/tie down area was on airport-owned property and not property covered by the lease, Plaintiff has no viable claim for breach of contract, constitutional violations, or otherwise. Thus, summary judgment is proper as to these claims.

Fourth, Plaintiff contended that "[his] personal property in the form of a fuel containment area was destroyed by another tenant with the full knowledge and consent of the airport with no warning, or consultation, with Ricks." Pl.'s Compl. [1] ¶ 22. Plaintiff described the fuel containment area as "a rectangular pit about four feet deep with concrete sides and a concrete bottom measuring roughly 12 feet by 20 feet." Pl.'s Mem. Brs. Supp. Resp. to Defs.' MSJ [87] & [89] at 3. Plaintiff maintained he received the fuel containment area "in exchange for providing assistance to Harmon with an alleged FAA violation" which Plaintiff estimated was worth "approximately $2,500." *Id.* Plaintiff conceded that although Harmon represented he owned the fuel containment area, Plaintiff never saw a deed for it, and Harmon never told Plaintiff that Harmon had any leasehold or ownership interest in the land where the fuel containment area was located. *Id.* Plaintiff contended that the fuel containment area was destroyed in 2006 during the construction of an addition to the Heath Avionics hangar and that Plaintiff reached an agreement with Heath for Heath to pay him "between $2,225 and $2,500 in compensation for the destroyed fuel pit." *Id.* Finally, Plaintiff conceded he did not attempt to rebuild another fuel containment area "because the airport has built its own fueling facility that is better than anything he could build." *Id.* Plaintiff maintained that he never received notice from Defendants that Heath would destroy the fuel containment area and that the lack of notice

14

constitutes a breach of Plaintiff's contract with the airport. The Court finds that the claim is time-barred under both federal and state law. The destruction of the fuel containment area occurred in 2006. As previously stated, the statute of limitations imposed by Section 1983 is three years; the statute of limitations imposed by state law is one year. Because the incident at issue occurred in 2006 and this claim was brought in 2011, the claim is time-barred under both Section 1983 and state law. Assuming, *arguendo*, the claim is not time barred, the Court finds that although Plaintiff claimed that he owned the fuel containment area, he conceded the airport owned the property on which it was placed by him. The only contract at issue is Plaintiff's lease for the property under the roof of the hangar building. Because the fuel containment area was on airport-owned property and not property covered by the lease, Plaintiff has no viable claims for breach of contract, constitutional violations, or otherwise against Defendants. Accordingly, summary judgment is proper as to these claims.

Fifth, Plaintiff maintained that his "drainage is routinely compromised by the airport either causing, or allowing, drainage problems causing flooding of [Plaintiff's] hangar." Pl.'s Compl. [1] ¶ 22. Plaintiff conceded that the problem was rectified in 2002 and that he had no drainage problems since then. Pl.'s Mem. Brs. Supp. Resp. to Defs.' MSJ [87] & [89] at 2–3. Clearly, this claim is time-barred under both Section 1983 and state law, as the problem was rectified in 2002, and the cause of action was brought in 2011.

Sixth, Plaintiff maintained that "[t]he airport provided a raised foundation, moved a road, and allowed placement of another tenant's building, centered and contiguous to the ramp, . . . that indirectly caused blocking of [Plaintiff's] ingress and egress from his hangar as well as severely limiting the public parking space on the apron." Pl.'s Compl. [1] ¶ 22. Plaintiff does not appear to address the claim in his responses to the motions for summary judgment. The

15

Court finds that as Plaintiff has not presented sufficient evidence to sustain this claim past summary judgment, dismissal of this claim is proper.

Seventh, Plaintiff claimed that the airport did not mow his grass regularly. *Id.* Plaintiff claimed that over the past three years, every other airport tenant's grass was mowed more than his, but he conceded he did not know whether other airport occupants mow their own grass or do their own weed-eating, and he never asked. Pl.'s Mem. Brs. Supp. Resp. to Defs.' MSJ [87] & [89] at 4–5. Plaintiff also conceded he had no evidence indicating the airport intentionally caused his grass to be cut less often than other airport tenants' grass. Finally, Plaintiff conceded he was aware that airport manager Jimmy Hayward testified that because the airport operates on a limited budget, workers generally mow only those areas around the airport entrance. The Court finds that as Plaintiff has not presented sufficient evidence to sustain this claim past summary judgment, dismissal of this claim is proper.

Eighth, Plaintiff claimed that "[t]he airport has spread malicious and false information to the public and government regarding [Plaintiff's] ownership of property on the airport as well as [Plaintiff's] character to local and [f]ederal government officials. Pl.'s Compl. [1] ¶ 24. Plaintiff conceded that the statements to which he was referring were made in 1993 or 1994 by Ed Corban to the Board of Supervisors, the Montgomery County tax assessor, and the FAA, that Plaintiff "did not have a proper title to his hangar and that there were liens against it," and in 1995 by the tax assessor in a Board of Supervisors Meeting that Plaintiff "had sued his mother and had stolen things." Pl.'s Mem. Brs. Supp. Resp. to Defs.' MSJ [87] & [89] at 2. These claims of malicious and false statements from 1993 to 1995 are clearly time-barred under both Section 1983 and state law, as the claims were brought in 2011. Thus, the Court finds that dismissal of these claims is proper.

Ninth, Plaintiff claimed he has "no security on the airport." Pl.'s Compl. [1] ¶ 26. Plaintiff acknowledged in his deposition that a security fence was erected around the airport in approximately 2005, and that Hayward, the airport manager, gave Plaintiff a remote control device to open and close the security gate so that Plaintiff could get in and out easily. Pl.'s Mem. Brs. Supp. Resp. to Defs.' MSJ [87] & [89] at 5. Plaintiff maintained that he was "discriminated against because the security gate is sometimes left open by others, and his hangar is closest to the gate[ ] which could expose him to theft." *Id.* Plaintiff conceded he had not had any break-ins or attempted break-ins since the late 1990s. *Id.* Plaintiff additionally conceded that "the only evidence he has that the gate was intentionally left open to cause him problems is the fact that his hangar is closest to the gate." *Id.* The Court finds that Plaintiff has not presented sufficient evidence to sustain this claim past summary judgment; thus, dismissal of this claim is proper.

Tenth, Plaintiff claimed Defendants "acted in concert as a joint venture, conspiracy[,] and/or agency with any of the other defendants" to prevent his purchase of the hangar he has leased at the airport. Pl.'s Compl. [1] ¶ 14. These claims are clearly time-barred under both Section 1983 and state law, as any alleged conspiracy would have occurred in 1993 or prior. The Court notes that Plaintiff further has presented insufficient evidence to sustain these claims past summary judgment, and, accordingly, dismissal is proper.

Finally, Plaintiff has merely identified the names of several causes of action in his complaint with no facts alleged in support and no mention in his responses to the motions for summary judgment. These causes of action are as follows: the breach of duty of good faith and fair dealing; misrepresentation; constructive eviction; fraudulent concealment; intentional and/or negligent infliction of emotional distress; breach of public property; fraud; conversion; and the tort of outrage. Additionally, Plaintiff has asserted violations of Mississippi Code sections

17

relating solely to schools; Plaintiff has since conceded these two statutes have no application to this case. Summary judgment is proper on all those claims.

### *D. Conclusion*

In sum, Defendants' motions for summary judgment, [78] and [82], will be GRANTED, as the Court finds that dismissal of all claims is proper for the foregoing reasons, and Defendants are entitled to judgment as a matter of law on all claims.

A separate order in accordance with this opinion shall issue this day.

THIS, the 9th day of March, 2012.

                                                                                           /s/ Glen H. Davidson
                                                                                           SENIOR JUDGE